Matter of Renna (2024 NY Slip Op 01376)

Matter of Renna

2024 NY Slip Op 01376

Decided on March 14, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 14, 2024

PM-43-24
[*1]In the Matter of Hanna Mary Renna, an Attorney. (Attorney Registration No. 5737259.)

Calendar Date:December 18, 2023

Before:Clark, J.P., Pritzker, Ceresia, McShan and Mackey, JJ.

Monica A. Duffy, Attorney Grievance Committee for the Third Judicial Department, Albany (Robert Max Beyer of counsel), for Attorney Grievance Committee for the Third Judicial Department.
Robert J. Masters, Little Neck, for respondent.

Per Curiam.
Respondent was admitted to practice by this Court in 2020, following her previous admission in Florida in 2010 and in Michigan in 2018. She currently lists a business address in Chemung County. In January 2023, respondent was suspended from practice for a 90-day term by the Supreme Court of Florida upon respondent's consent and her admission that, in the context of her representation of a criminal defendant, she had used an altered photo pack in her deposition of a child witness in violation of Florida law. Following the use of the altered photo pack, wherein the witness misidentified the purported perpetrator of the crime as compared to a previous statement given to law enforcement, respondent moved to suppress the witness's out-of-court identification of her client. Thereafter, the Assistant State Attorney cross-moved to preclude the use of the misidentification testimony elicited at the deposition, arguing that respondent's actions in using the altered photo pack during the deposition were impermissible under Florida case law (see State v Kuntsman, 643 So 2d 1172 [Fla 3rd Dist Ct App 1994]).[FN1] Ultimately, respondent reported her conduct to the Florida Bar, resulting in the aforementioned suspension, as well as a directive that she attend the Florida Bar's Ethics School and Professionalism Workshop within six months of the date of the Court's order and pay certain fees and costs. Respondent was automatically reinstated in Florida in May 2023, and was reciprocally disciplined in Michigan, but was reinstated in that jurisdiction in September 2023. The Attorney Grievance Committee for the Third Judicial Department (hereinafter AGC) now therefore moves, by order to show cause, to impose discipline upon respondent in this state due to her Florida misconduct (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.13; Rules of App Div, 3d Dept [22 NYCRR] § 806.13). Respondent has responded to AGC's motion by affirmation of counsel, wherein she opposes the imposition of reciprocal discipline in this state, among other things.
Pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13 (c), we may discipline an attorney for "misconduct committed in [a] foreign jurisdiction." In defense, an attorney may assert that the disciplinary proceedings in the foreign jurisdiction lacked due process; that there was an infirmity of proof establishing the misconduct; or that the alleged misconduct forming the basis of discipline in the foreign jurisdiction would not constitute misconduct in New York (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.13 [b]). Here, respondent's opposition papers appear to raise the third defense, inasmuch as she asserts that she would not have been disciplined under the same set of facts had the misconduct occurred in New York as opposed to Florida (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.13 [b] [3]). Respondent's misconduct, as established by her plea, implicates four of Florida's Rules Regulating [*2]the Florida Bar, which are similar, if not identical, to New York's analogous rules, and her established conduct in Florida therefore constitutes misconduct in this state in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.1 (a), 1.3 (a) and 8.4 (a) and (d) (see Matter of D'Amico, 166 AD3d 1375, 1375 [3d Dept 2018]).[FN2] Given this, we grant AGC's motion, find the misconduct established and turn to the appropriate disciplinary sanction (see Matter of Sherman, 214 AD3d 1065, 1066 [3d Dept 2023]; Matter of McCarthy, 166 AD3d 1465, 1466-1467 [3d Dept 2018]).
On that point, we are not obliged to impose the same sanction that was imposed by the foreign tribunal, but rather are charged with crafting a sanction that protects the public, maintains the honor and integrity of the profession or deters others from engaging in similar misconduct (see Matter of Durkin, 220 AD3d 1046, 1048 [3d Dept 2023], see also Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.8 [b] [2]). Despite having this discretion, we have nonetheless routinely imposed the same discipline that was imposed in the foreign jurisdiction (see e.g. Matter of Haar, 212 AD3d 1072 [3d Dept 2023]; Matter of Jones, 212 AD3d 1068 [3d Dept 2023]; Matter of Sablone, 211 AD3d 1226 [3d Dept 2022]), unless some additional mitigating or aggravating factor warrants a lesser sanction (see e.g. Matter of Durkin, 220 AD3d at 1048), or an upward departure (see e.g. Matter of Yiheng Lou, 206 AD3d 1221 [3d Dept 2022]).
Here, respondent's submissions largely focus on mitigating factors, including her timely notice to AGC of both the Florida and Michigan disciplinary actions (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.13 [d]), as well as her subsequent reinstatement in both jurisdictions. Respondent also cites, among other things, the penalties issued in Florida and Michigan (see ABA Standards for Imposing Lawyer Sanctions standard 9.32 [k]); the absence of a prior disciplinary record (see ABA Standards for Imposing Lawyer Sanctions standard 9.32 [a]); the financial and professional impact these proceedings have caused; her honesty, remorse and efforts to remediate her actions (see ABA Standards for Imposing Lawyer Sanctions standard 9.32 [d]); her lack of dishonest intent (see ABA Standards for Imposing Lawyer Sanctions standard 9.32 [b]); her career in public service; and her positive character and reputation, as attested to by various letters of support from former Florida, and current New York, colleagues (see ABA Standards for Imposing Lawyer Sanctions standard 9.32 [g]). Furthermore, AGC does note the mitigating factors cited by Florida in the consent judgment — many of which respondent also cites — but also raises, in aggravation, respondent's failure to attend the Professionalism Workshop as required by the consent judgment. Respondent avers that her inability to attend the Professionalism Workshop in-person stems from various personal and professional issues, and she [*3]has been working with Florida authorities to either attend the workshop remotely or at an alternative location.
At the outset, we have significant concerns about respondent's primary defense that, as a practicing attorney with 10 years of experience in the field of criminal law, she was unaware of case law prohibiting the use of altered photo packs in witness depositions. Despite her arguments that the mistake was in good faith, and was a consequence of being a public servant with a significant caseload, and her supposition that other attorneys were purportedly unfamiliar with the rule which she was found to have violated, we note that respondent is now practicing full time in this state in a position of considerable public trust. Notwithstanding this, upon review of all of the facts, and in order to protect the public, maintain the honor and integrity of the profession and to deter others from engaging in similar misconduct, we censure respondent.
Clark, J.P., Pritzker, Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the motion of the Attorney Grievance Committee for the Third Judicial Department is granted; and it is further
ORDERED that respondent is censured.

Footnotes

Footnote 1: The court in Kunstman found that the purpose of the discovery process in criminal proceedings, including the deposition of a witness pursuant to Florida statute, is to provide defense counsel with favorable evidence and to avoid surprise tactics in the courtroom, but the process does not exist to provide a defendant with the opportunity to build his or her case through the creation of evidence, specifically misidentification evidence (see State v Kuntsman, 643 So 2dat 1174).

Footnote 2: Inasmuch as respondent does not assert any of the remaining defenses, those defenses have been waived, although it is noted that respondent fully participated in the Florida disciplinary proceedings and was represented by counsel, ultimately consenting to a judgment to resolve the charges against her (see Matter of Hoines, 185 AD3d 1349, 1349-1350 [3d Dept 2020]).